**Richard FITZPATRICK; Dorothy Fitzpatrick, Plaintiffs–Appellees,**

**v.**

**CITY OF DEARBORN HEIGHTS, a municipal corporation; Edward D. Opalewski, individually and in his capacity as Director of the City of Dear-**

born Heights Building Department; Peter Simakas, individually and in his capacity as Ordinance Officer for the City of Dearborn Heights, Defendants–Appellants.

No. 00–1978.

United States Court of Appeals, Sixth Circuit.

Sept. 6, 2001.

Before RYAN and COLE, Circuit Judges; and MARBLEY,* District Judge.

RYAN, Circuit Judge.

The defendants, Edward D. Opalewski and Peter Simakas, appeal the district

court's decision denying their motions for summary judgment. We conclude that we do not have jurisdiction in this interlocutory appeal. Therefore, we will DISMISS it without prejudice and REMAND the case for further proceedings.

I.

The defendants raise a number of issues, but one they have not raised, is whether this court has appellate jurisdiction of the appeal. This, of course, is a threshold issue we must consider in every appeal, whether raised by the parties or not. For the reasons we shall discuss, we conclude that we do not have appellate jurisdiction. To understand precisely why we do not, it is necessary to understand the facts of the case.

II.

The plaintiffs, Richard and Dorothy Fitzpatrick, began living at 26156 Powers Street in Dearborn Heights, Michigan, in 1963. On March 19, 1997, while the Fitzpatricks were at their seasonal home in Florida, the City of Dearborn Heights Police Department received a complaint from Peter Orlando, one of the Fitzpatricks' neighbors, who told the police that the Fitzpatricks' home appeared to have been broken into. According to Orlando, several windows in the home were broken, some of the curtains were flapping in the wind outside the windows, and clothing and cans were strewn about outside the home. Orlando reported that the house next door also appeared to have been broken into.

When officers of the City of Dearborn Heights Police Department went to the Fitzpatricks' home they found it unoccupied and in the condition Orlando had de-

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

scribed. Dearborn Heights Ordinance Officer Simakas inspected the property and determined that emergency action was necessary to secure the property against threats to public health and safety, pursuant to sections 7–485 and 7–652 of the City of Dearborn Heights Building Code. In accordance with the Code, the home was immediately boarded up and a condemnation placard was posted. Notices of condemnation and intent to demolish the building were sent to the Fitzpatricks by certified mail at the Powers Street address, but were returned as not received because the Fitzpatricks were residing in Florida at the time.

Upon returning to their home in the spring of 1997, the Fitzpatricks found the house boarded up, so they went to the city Building Department, where they were served with a condemnation notice and informed that they could appeal the condemnation decision to the city zoning board. Opalewski, Director of the Building and Engineering Department, permitted the Fitzpatricks to have the broken windows replaced and the condemnation placard removed. The City of Dearborn Heights then waived the condemnation proceedings and sought a "walk-through" inspection of the home in order to determine whether any structural damage had occurred to the building. A walk-through inspection is required before the city is authorized to issue a certificate of occupancy. The Fitzpatricks refused to allow the inspection, contending that they were not required to have a certificate of occupancy because the condemnation was unauthorized by law in the first place.

### III.

On May 28, 1997, the Fitzpatricks filed a complaint in the Wayne County, Michigan, Circuit Court alleging violations of their civil rights and requesting an order permitting them to move back into their home without an inspection. The circuit court judge denied a restraining order, ordered a show of cause hearing for a preliminary injunction, held in abeyance a ruling on the legality of the condemnation, and ordered the Fitzpatricks to permit the walk-through inspection of their home by June 9, 1997. The Michigan Court of Appeals denied a *mandamus* petition to alter the circuit court's ruling.

The defendants removed the case to the United States District Court for the Eastern District of Michigan. The Fitzpatricks then amended their complaint contending, *inter alia*, that the City of Dearborn Heights officers had violated 42 U.S.C. § 1983 by condemning the home without a predeprivation notice and hearing, thus violating the Fitzpatricks' constitutional right to due process. The defendants moved to dismiss the case under Fed. R.Civ.P. 12(b)(6) and the district court granted the motion, in effect, crediting the defendants' claim that the condition of the home presented an "emergency" situation that justified the city's action.

The Fitzpatricks appealed and this court reversed the district court's judgment dismissing the case under Rule 12(b)(6) and remanded it for further proceedings. *Fitzpatrick v. City of Dearborn Heights*, No. 98–1327, 1999 WL 357756 (6th Cir. May 21, 1999) (unpublished disposition). This court reasoned that the Fitzpatricks had indeed stated an actionable claim "for the violation of their procedural due process rights" because they had "alleged [in their complaint] that no emergency existed under the facts of [the] case" to justify the defendants' action boarding up and condemning the property "without a predeprivation procedure, including notice and a hearing." *Id.* at **2. Therefore, this court stated, the question whether an emergency existed was a "threshold" issue

and "a factual finding was necessary before crossing that threshold." *Id.* The case was remanded to the district court.

After remand, the defendants filed a motion for summary judgment, arguing, *inter alia,* that Opalewski and Simakas were entitled to qualified immunity. The district court conducted a hearing and denied the motion. The defendants then filed this appeal, and we granted their motion to stay further proceedings in the district court pending disposition of the appeal.

### IV.

Government officials who cause injury to others can be held liable under 42 U.S.C. § 1983, which provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (West Supp.2001).

▪ To be liable under section 1983, an official must have encouraged, authorized, participated, or acquiesced in alleged misconduct. *See Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999), *cert. denied,* 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000). But the Supreme Court has exempted a certain category of officials from liability for injury done to others. The Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This court recently reiterated the three-prong test for evaluating qualified immunity claims:

First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (*en banc* ).

▪ Ordinarily we do not have appellate jurisdiction of an order denying a motion for summary judgment because no final judgment has been entered. *Berryman v. Rieger,* 150 F.3d 561 (6th Cir.1998). However, an exception is the case in which the denial is based upon the district court's judgment that, as a matter of law, the defendant is not entitled to qualified immunity, because the *Harlow* criteria, as explicated in *Williams,* have not been met. *Id.* at 562. Stated differently, an interlocutory appeal from a denial of summary judgment on grounds of qualified immunity is allowed "*only* if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law" of which a reasonable person would have known. *Id.* at 563 (emphasis added). The *Berryman* court also stated:

We hold that in order for such an interlocutory appeal based on qualified immunity to lie, the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the

facts in the light most favorable to the plaintiff's case.

*Id.* at 562.

The problem for us in this case is that following a careful examination of the record, and particularly the language of the district court's ruling from the bench, we cannot tell with any degree of certainty whether the district court denied the defendants' motion for summary judgment because conceding to the plaintiffs the facts as alleged by them, the court, applying the *Harlow* criteria, determined that the Dearborn Heights officials had not demonstrated their entitlement to qualified immunity, or whether the court thought there remained a genuine issue of material fact which, quite independent of the law of qualified immunity, required jury fact finding and thus precluded summary judgment.

### V.

■ Here, there is no dispute about what the defendants did: they boarded up the Fitzpatricks' home and posted a condemnation notice on it without first providing the Fitzpatricks with notice and a hearing. That is what the plaintiffs allege and the defendants do not dispute it.

However, the defendants claim they are immune from suit for what they concededly did because, they argue, their conduct did not violate any clearly established constitutional right of the Fitzpatricks' (notice and a hearing) of which, in the circumstances, a reasonable official would have known. This is so, the defendants argue, because they *reasonably believed* that they were confronted with an emergency situation involving a threat to the public health and safety within the meaning of the Dearborn Heights ordinance. That being so, the defendants argue, the Fitzpatricks suffered no constitutional violation at all–no denial of due process–because they were

not entitled to notice and a hearing *before* their home was boarded up and the condemnation notice was posted. And, the defendants argue further, even if the denial of a predeprivation notice and hearing was a denial of due process and therefore a violation of the Fitzpatricks' constitutional rights, the defendants are nevertheless immune from suit under *Harlow* because, given the emergency situation that confronted them, no "reasonable person would have known," *Harlow,* 457 U.S. at 818, that boarding up the home and posting a condemnation notice without *first* giving notice and conducting a hearing would violate the Fitzpatricks' constitutional rights.

We are handicapped in understanding the district court's reasoning because no written opinion was prepared. We are left to comb through the transcript of the colloquy between the court and counsel at the summary judgment hearing and determine therefrom the district court's reasoning in denying the defendants' summary judgment motion.

Here is what the district court said:

THE COURT: I think I generally understand your argument there and understand what the law provides. I think my problem, with the argument, to get all the way home to where you'd like me to get to grant a motion for summary judgment, is that it seems to me that there are very likely, when you're done arguing and when [the plaintiffs' counsel is] done arguing, there's going to be a residual area of *a factual question left on whether or not there was an emergency* that isn't going to get in my way if I should be otherwise persuaded that summary judgment should be granted.

(Emphasis added.)

The district court's statement is not the classic language of denial of summary

judgment on "the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman,* 150 F.3d at 563. Indeed, nowhere in the transcript of the hearing does the district court make any reference to the criteria for qualified immunity as set forth in *Harlow* or otherwise indicate that it is denying summary judgment as a matter of law because the defendants had not carried their burden under *Harlow.*

Although we are reluctant to speculate as to what the learned district judge had in mind beyond what he stated in the record, it appears that his thinking was that the defendants were not entitled to summary judgment because the court thought there was a material question of fact to be resolved by a fact finder: whether there was an "emergency" that justified denying the Fitzpatricks' notice and a hearing before boarding up and condemning their home.

If that was the district court's reasoning for denying the defendants' request for qualified immunity, the court erred. For purposes of determining whether the individual defendants were entitled to summary judgment on the grounds of qualified immunity, the district court need not have waited for a jury to decide whether an "emergency" existed. It matters not, for purposes of determining whether the defendants were entitled to qualified immunity, whether *in fact,* an emergency existed; what matters is whether, what the defendant actors did, *including their* conclusion that they *thought* an emergency existed and their acting upon that conclusion by boarding up and posting condemnation notices on the property without first providing a hearing, was conduct "a reasonable person would have known" violated the Fitzpatricks' "clearly established ... constitutional rights"–and that is a mixed question of law and fact for the trial judge

to decide, applying the *Harlow* criteria. If, having done that analysis, the district court denied summary judgment, the denial is immediately appealable. *Id.* But, as we have said, that does not appear to have been the district court's ruling.

In fairness to the district judge, we think he may have been led astray by the language this court used in its opinion reversing and remanding the first judgment of dismissal. This court's *per curiam* opinion flatly declared that "a factual finding was necessary" on the threshold issue of whether there was an "emergency" justifying the defendants in condemning the property without a predeprivation hearing. That language could understandably have led the district court, on remand, to think it must deny summary judgment because of the need for "a factual finding" on the issue of whether an emergency existed.

We can only conclude, based on the district court's statement, and particularly because of the absence of any reference to the law of qualified immunity and the *Harlow* criteria a district court must apply in granting or denying summary judgment on qualified immunity grounds, that the district court denied the defendants' motion because the court thought there was a material question of fact to be resolved by a fact finder. Such a ruling, as we have said, is not immediately appealable.

## VI.

In summary, the defendants have not demonstrated, as is their burden, that we have appellate jurisdiction of this interlocutory appeal because it is a final judgment denying, as a matter of law, the defendants' claim of qualified immunity from suit. We must, therefore, dismiss the appeal and remand the case to the district court.

If, on remand, the defendants renew their motion for summary judgment on qualified immunity grounds, we respectfully urge the district court to prepare a written opinion, fully explaining the rationale for its ruling.

## VII.

For the foregoing reasons, the appeal is DISMISSED and the case is REMANDED to the district court for further proceedings.