NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0417n.06
Filed: July 14, 2008

No. 07-3274

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SELENA REED, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ARNEIL ROSE, CITY OF CLEVELAND, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants, | ) | OPINION |
| | ) | |
| and | ) | |
| | ) | |
| TIMOTHY CLARK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: KENNEDY, GILMAN, and GIBBONS, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge**. This action, brought under 42 U.S.C. § 1983 and Ohio state law, arises from the fatal shooting of Brandon Robinson by one of two police officers employed by the City of Cleveland. Selena Reed, Robinson's mother and the administratrix of his estate, claims that the officer who shot and killed Robinson used excessive force and thereby violated his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Robinson was shot while attempting to flee after he and his friend Courtney Mays were confronted by Officers Timothy Clark and Arneil Rose.

Officer Clark claims that he is entitled to qualified immunity for his actions, but the district court concluded that genuine issues of material fact precluded the grant of summary judgment in his favor. On appeal, Clark contends that the district court erred in denying summary judgment on his qualified-immunity claim. He also renews his argument that he was never properly served with a federal-court summons, thereby making the district court's exercise of personal jurisdiction over him improper. For the reasons set forth below, we **DISMISS** this interlocutory appeal for lack of jurisdiction.

## I. BACKGROUND

The parties are of course familiar with the facts underlying the present case. We therefore include a brief summary only insofar as is necessary to provide background for the analysis set forth in Part II. below.

### A. Factual background

On the afternoon of January 18, 2004, Mays and Robinson picked up food at a Burger King restaurant. Mays then drove his car, with Robinson in the passenger seat, to 3598 East 151st Street in Cleveland, where the two men sat in the parked car while they ate their food. In his deposition, Mays stated that Robinson also attempted to hook up a portable television to the cigarette lighter so that they could watch a movie.

Meanwhile, Officers Clark and Rose received a radio dispatch that reported drug activity taking place in a car on 151st Street. The call gave a specific address and a description of the vehicle in question. Clark and Rose drove to 151st Street and, upon their arrival, parked behind a car that

fit the description that they had been given by the dispatcher. According to Clark's deposition testimony, the officers saw two men inside the car. The driver, later identified as Mays, apparently matched the dispatcher's description of one of the individuals reportedly engaging in the drug activity.

Officer Clark then made a call to the dispatcher to run a check on the vehicle's license-plate number. Before receiving any information back, however, the officers saw "furtive movements" inside the suspect car and told the dispatcher to "hold" the information. Officer Rose described the suspicious movements as "people turning back, looking at you, then reaching down in a downward motion continuously." Without discussing how to proceed, both officers exited the patrol car with their guns drawn and approached the car in front of them.

Officer Clark went to the passenger side of the vehicle and Officer Rose went to the driver's side. Rose ordered Mays to exit the car, at which point Rose immediately handcuffed him. Clark then ordered Robinson out and took him toward the back of the car. Before Clark was able to handcuff Robinson, however, Robinson took off running down the street. Clark chased Robinson and tackled him to the ground. Both parties agree that a struggle then ensued.

Testimony offered by four witnesses—Mays, Officers Clark and Rose, and Bessie Mathis, a resident of a house on 151st Street near where the struggle took place—provides varying, conflicting accounts of what happened during this struggle. For the purposes of our analysis, the most important discrepancies exist between the testimony of Clark and that of Mathis.

Officer Clark, for his part, stated that Robinson managed to get on top of him and punched him in the face. He also testified that, during the struggle, Robinson reached for the gun in Clark's

holster. As they wrestled over the gun, Clark acknowledged that he fired a single gunshot at Robinson. The latter was killed by a single bullet to the chest. Clark claimed that he shot Robinson because he feared for his life and the lives of others.

On the other hand, Mathis testified that she saw "every bit" of the struggle between Officer Clark and Robinson and the eventual shooting of Robinson. She claimed that Robinson was never on top of Clark and that she did not see Robinson punch Clark. Furthermore, she stated that Robinson neither wrestled with Clark, tried to get away, nor reached for Clark's gun. Mathis instead said that she saw Robinson put his hands up in the air when Clark tackled him onto his back, and that Clark had his knee on Robinson. In contrast to Clark's own admission and Officer Rose's testimony, Mathis said that Rose (who ran over to the two men after ensuring that Mays's handcuffs were secure), and not Clark, actually shot Robinson. Mathis explained that her basis for saying that Rose fired the fatal shot is the way Rose handled his gun immediately after she saw Robinson slump to the ground.

**B.      Procedural background**

In March of 2004, Reed filed this action in Ohio state court against Officer Clark, Officer Rose, and the City of Cleveland. The City promptly filed a petition to remove the case to federal court, to which both officers consented. In October of 2005, all three defendants filed a motion for summary judgment. Clark conceded that he had shot and killed Robinson but claimed that he was entitled to qualified immunity for his actions.

The district court granted the motion as to the City but denied the motion as to Clark and Rose. Adopting the Report and Recommendation issued by the magistrate judge to whom the case

had been referred, the court found that genuine issues of material fact existed as to (1) which officer shot Robinson, and (2) whether the officer who shot Robinson reasonably believed that the latter posed a threat to the officer or to the public. The court therefore concluded that genuine issues of material fact precluded granting qualified immunity to Clark on a motion for summary judgment. Clark timely appealed.

## II. ANALYSIS

Qualified immunity protects government officials from liability for civil damages stemming from their performance of discretionary functions so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A district court's grant of summary judgment on a qualified-immunity claim constitutes an appealable final decision under 28 U.S.C. § 1291. *See, e.g.*, *Dunigan v. Noble*, 390 F.3d 486, 488 (6th Cir. 2004) (exercising appellate jurisdiction, pursuant to § 1291, over the district court's grant of summary judgment based on qualified immunity). The denial of summary judgment on such a claim, however, is subject to challenge as a final decision within the meaning of § 1291 only to the extent that it turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 529 n.9, 530 (1985) (emphasizing that "the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law"); *see also Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) (holding that a defendant raising a claim of qualified immunity "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial").

In other words, "for appellate jurisdiction to lie over an interlocutory appeal, a defendant seeking qualified immunity must be willing to concede the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002). To the extent that the arguments raised by a defendant regarding qualified immunity "rely exclusively on a disputed version of the facts, this court does not have jurisdiction to consider [the] appeal." *McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006).

Reed argues that we do not have jurisdiction over Officer Clark's appeal because Clark is disputing the district court's factual findings rather than its legal conclusions. We agree. Despite Clark's repeated attempts to characterize the qualified-immunity claim before us as a purely legal question, his arguments "in fact rely on [his] own disputed version of the facts, not the facts as alleged by [Reed]." *See id.* Clark's claim (broken down into several different arguments) is essentially that Mathis's testimony must be discredited in its entirety because it conflicts with other evidence and is therefore totally unreliable. In particular, he contends that (1) Mathis's belief that Officer Rose fired the fatal shot is refuted by the coroner's report showing that the shot was fired within a quarter inch of Robinson's chest, and (2) Mathis's testimony that she did not see Robinson grab Clark's gun "does not mean that it did not, in fact, happen."

Officer Clark's first argument fails because, even assuming that Mathis's recollection is contradicted by the coroner's report and that Clark did indeed shoot Robinson (a fact that Clark himself admits), such an assumption would neither require nor permit us to ignore the entirety of Mathis's testimony. A finding that Clark shot Robinson would also do nothing to establish the more central question of whether that use of force was objectively reasonable under the circumstances,

which is the inquiry that we would undertake if Clark were willing to view the facts in the light most favorable to Reed. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985) (holding that courts must evaluate the constitutionality of an officer's use of deadly force to apprehend a fleeing suspect based on the reasonableness standard contained in the Fourth Amendment).

Officer Clark's reading of Mathis's testimony (i.e., that she simply did not see what happened) ignores Mathis's own repeated statements that she watched "every bit" of the incident and that Robinson immediately raised his hands in the air after being tackled by Clark. This conflicting interpretation of the record constitutes precisely the type of impermissible resolution of a disputed fact that is inappropriate in evaluating a claim of qualified immunity, and that, in the context of a denial of such a claim, deprives us of jurisdiction to review Clark's claim in the first instance.

Indeed, our independent review of the record demonstrates that the district court properly found that genuine issues of material fact preclude the conclusion that Officer Clark is entitled to qualified immunity as a matter of law. Mathis's eyewitness testimony calls into question not only who shot Robinson but, more importantly, whether the force used was reasonable under the circumstances. Without being able to resolve the disputed factual question of whether Robinson actually attempted to gain control of Clark's gun, we cannot conclude that the use of force was reasonable as a matter of law. *See Garner*, 471 U.S. at 11 (explaining that an officer may reasonably use deadly force to prevent the escape of a suspect only if the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others").

Clark's argument that we can decide his claim as a matter of law requires us to ignore or discount the testimony in the record that contradicts his own factual account. This we cannot do.

*See Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998) ("[I]n order for . . . an interlocutory appeal based on qualified immunity to lie, the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case.").

And because we lack jurisdiction to consider the qualified-immunity claim raised by Officer Clark, we necessarily lack jurisdiction to consider his pendent claim that he was not properly served with a summons. *See McKenna*, 469 F.3d at 562-63 (explaining that pendent appellate jurisdiction exists over issues that are otherwise not reviewable in an interlocutory appeal but that are "inextricably intertwined with matters over which the appellate court properly and independently has jurisdiction," and concluding that the court lacked jurisdiction to consider the officers' pendent claim in the absence of jurisdiction over the qualified-immunity issue (internal quotation marks omitted)). We therefore decline to address the merits of this pendent claim.

### III. CONCLUSION

For all of the reasons set forth above, we **DISMISS** this interlocutory appeal for lack of jurisdiction.