**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0353n.06

No. 16-5487

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

KAREN LAWRENCE, Personal Representative )
for the Estate of Charles Hoffman, )
 )
    **Plaintiff-Appellee,** )
 )
v. )
 )
MADISON COUNTY et al., )
 )
    **Defendants,** )
 )
and )
 )
DOUG THOMAS, )
 )
    **Defendant-Appellant.** )
 )

**FILED**
Jun 21, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

**OPINION**

Before: **BOGGS, SILER, and MOORE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Madison County Jailer Doug Thomas appeals the district court's judgment denying qualified official immunity as to Plaintiff-Appellee Karen Lawrence's state-law negligence claim. Lawrence, as personal representative for the estate of her son Charles Hoffman, brought this lawsuit after Hoffman committed suicide while incarcerated in the Madison County Detention Center (MCDC). Lawrence sued Madison County and employees of the MCDC in their official and individual capacities for constitutional and state-law violations. This appeal concerns only Jailer Thomas's claim of qualified official immunity from Lawrence's individual-capacity state-law negligence

claim against Thomas. Lawrence alleged that Thomas was negligent because he failed to enforce a mandatory policy requiring jail employees to check on inmates in isolated housing every twenty minutes. The district court held that Thomas did not have qualified official immunity because Thomas's duty to enforce the mandatory twenty-minute check-in policy was ministerial, not discretionary. For the reasons discussed below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual Background

Charles Hoffman was committed to the custody of the MCDC on October 14, 2012. R. 156-6 (Hoffman Med. Questions Form 10/14/2012) (Page ID #1311); R. 156-1 (Mem. in Support of Summ. J. at 2) (Page ID #1258). Hoffman was on parole in Michigan until he cut off his ankle monitor and fled to Kentucky, where he was apprehended and taken to the MCDC. R. 156-2 (Lawrence Dep. at 46–48) (Page ID #1289–91); R. 156-1 (Mem. in Support of Summ. J. at 2) (Page ID #1258).

On November 7, 2012, Hoffman was put into isolated housing (also called "the hole"). R. 154-13 (Incident Report 11/07/2012 at 1) (Page ID #871). There is a factual dispute as to why Hoffman was put in isolated housing—it is not entirely clear whether Hoffman threatened to kill himself, threatened to hurt himself without going so far as to threaten to kill himself, threatened to hurt others, or some combination. *See* Opinion & Order at 2–4 (summarizing various parties' and witnesses' statements about why Hoffman was moved to isolated housing). Although potentially relevant to other aspects of Lawrence's lawsuit, the details of why Hoffman was put

in isolated housing are not relevant to the sole issue in this appeal, which is whether Jailer Thomas is entitled to qualified official immunity on Lawrence's state-law negligence claim.

Hoffman committed suicide on November 10, 2012. R. 179-3 (Med. Exam'r Report at 1) (Page ID #4045). Hoffman hanged himself using a bedsheet and a plastic bag. *Id.* (Page ID #4045); R. 156-20 (Moody Dep. at 20–21) (Page ID #1392–93). Hoffman threaded the plastic bag through a small hole in the air vent and tied the other end of the bag to the bedsheet, which he had made into a noose. R. 156-20 (Moody Dep. at 20–21) (Page ID #1392–93). Officer Christine Greene went to Hoffman's cell at 8:42 p.m. and found him hanging from the ceiling. R. 179-3 (Med. Exam'r Report at 1) (Page ID #4045); R. 180 (Keeton Dep. at 21) (Page ID #4086). Officers unsuccessfully attempted CPR. *Id.* The coroner pronounced Hoffman dead shortly after Greene found him. R. 179-3 (Med. Exam'r Report at 1) (Page ID #4045).

The MCDC policy in effect on the day of Hoffman's suicide required officers to check every twenty minutes on inmates housed in the hole. R. 180 (Keeton Dep. at 110) (Page ID #4175). The evidence indicates that on the evening Hoffman committed suicide, no one checked on him for over three hours. Greene checked on Hoffman at 5:11 p.m. and found him dead at 8:42 p.m., but no one checked on him between 5:11 p.m. and 8:42 p.m. *Id.* at 22 (Page ID #4087). Greene initially disputed that she did not check on Hoffman between 5:11 p.m. and 8:42 p.m. During an investigation into Hoffman's death, Greene told detective Michael Keeton that she had checked on Hoffman between 5:30 p.m. and 6:00 p.m. and at approximately 7:30 p.m. *Id.* at 21 (Page ID #4086). Greene said that, at 7:30 p.m., Hoffman waved at her and told her he was fine. *Id.* (Page ID #4086). Greene also filled out a log indicating that she had checked on

Hoffman several times. *Id*. at 24 (Page ID #4089). However, the MCDC's surveillance video contradicts the logs and Greene's statements to Keeton, and shows that in fact Greene did not check on Hoffman between 5:11 p.m. and 8:42 p.m. *Id.* at 22 (Page ID #4087). Keeton concluded that Greene was lying when she said she checked on Hoffman between 5:11 p.m. and 8:42 p.m. and concluded that she had altered the logs. *Id.* at 22–23 (Page ID #4087–88).

Keeton asked Thomas about the altered logs. Thomas acknowledged that he knew his staff falsified the logs and that he previously had to talk to his staff about not altering the logs. R. 180 (Keeton Dep. at 37) (Page ID #4102). Keeton found that there was "a history [and] practice" of MCDC staff failing to check on inmates housed in the hole. *Id.*

## B. Procedural History

Lawrence filed suit in the United States District Court for the Eastern District of Kentucky on November 8, 2013. She brought constitutional and state-law claims against several defendants, including Thomas, Greene, and other officers who were on duty at the jail on the night Hoffman committed suicide. R. 1 (Compl. at 1, 7–15) (Page ID #1, 7–15). The sole claim at issue in this appeal is an individual-capacity state-law negligence claim against Thomas. Appellant Br. at 3; Appellee Br. at 3. The district court denied Thomas's motion for summary judgment with respect to the individual-capacity state-law negligence claim against him. Opinion & Order at 41. The district court held that Thomas did not have qualified official immunity. It determined that the twenty-minute check-in policy "unambiguously imposed a duty to perform a concrete act at a fixed interval, with no built-in discretion to deviate from that duty. Substantial evidence also supports . . . that Thomas failed to take reasonable steps to enforce the

requirement. The check-in requirement thus imposed a ministerial duty." *Id.* (footnote omitted). It determined that Thomas was "not entitled to qualified immunity for allegedly breaching that duty." *Id.* Thomas timely appealed.

## II. DISCUSSION

We have jurisdiction over an interlocutory appeal of the denial of qualified official immunity. *Hedgepath v. Pelphrey*, 520 F. App'x 385, 388–89 (6th Cir. 2013) (citing *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)); *cf. Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014). The defendant is entitled to summary judgment on the basis of qualified official immunity only if the undisputed facts (or, if there are disputed facts, the evidence viewed in the light most favorable to the plaintiff) establish that the requirements for qualified official immunity are satisfied. *Hedgepath*, 520 F. App'x at 388–89; *cf. Rowan Cty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006). We review the district court's judgment de novo. *See Finn v. Warren Cty.*, 768 F.3d 441, 448 (6th Cir. 2014).

Reviewing de novo, we reach the same conclusion as the district court. Enforcing the mandatory twenty-minute check-in policy is a ministerial function, and Thomas is not entitled to qualified official immunity for his failure to discharge this ministerial function.

"Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citation omitted). Qualified official immunity does not apply to "the negligent performance of a

ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted); *see also Sloas*, 201 S.W.3d at 477–79 (providing examples of discretionary and ministerial duties). "*Whether* the employee's act is discretionary, and not ministerial, is the qualifier that must be determined before qualified immunity is granted to the governmental employee." *Marson*, 438 S.W.3d at 296.

According to the Kentucky Supreme Court, "a ministerial act is 'one . . . when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.'" *Id.* at 297 (quoting *Yanero*, 65 S.W.3d at 522). "[A] governmental agent can rightfully be expected to adequately perform the governmental function required by the type of job he does. To the extent his job requires certain and specific acts, the governmental function is thwarted when he fails to do or negligently performs the required acts." *Id.* at 296. As such, "failing to properly carry out the government's commands when the acts are known and certain can be" a tort. *Id.* By contrast, "when performance of the job allows for the governmental employee to make a judgment call, or set a policy, the fact that there is uncertainty as to what acts will best fulfill the governmental purpose has resulted in immunity being extended to those acts where the governmental employee must exercise discretion." *Id.*

The key question is whether performing the act is mandatory, not whether the employee has some discretion about how to perform it: "[A]n act is not necessarily outside the ministerial realm 'just because the officer performing it has some discretion with respect to the means or method to be employed.'" *Id.* at 297 (quoting *Yanero*, 65 S.W.3d at 522). Even if an employee

has some discretion about how to do the act, if the employee "has no choice but to do the act, it is ministerial." *Id.*

In a case similar to this one, we ruled that under "'well-settled' Kentucky law . . . although a supervisor's decision 'on the content of policies and training is a discretionary function, the training of employees to adhere to their duties once that content is decided is a ministerial function.'" *Finn*, 768 F.3d at 449 (quoting *Hedgepath*, 520 F. App'x at 391). To the extent that "the contents of the policy were decided" and supervisors "simply failed to train the jailers on how to comply with those policies," an allegation of failing to train officers to follow a policy "implicate[d] a ministerial duty." *Id.* (quoting *Hedgepath*, 520 F. App'x at 391–92). Like training, "the supervision of employees is a ministerial act when it merely involved enforcing known policies." *Id.* (quoting *Hedgepath*, 520 F. App'x at 391).

*Marson* and *Finn* control the outcome of this case. As in *Finn*, the content of the policy at issue was decided. The policy made it mandatory for jail employees to check every twenty minutes on inmates housed in the hole. Because the policy made checking in every twenty minutes mandatory, the jail employees had no choice but to check on inmates every twenty minutes, and Thomas had no choice but to train the jail employees to comply with the policy and supervise them to ensure they were complying with the policy. Thomas "simply failed to train the jailers on how to comply with [the] polic[y]." *Finn*, 768 F.3d at 449 (quoting *Hedgepath*, 520 F. App'x at 391–92). Training and supervising the jail employees to follow the mandatory twenty-minute check-in policy "involv[ed] merely execution of a specific act"—namely, ensuring that jail employees followed the mandatory twenty-minute check-in policy—"arising

7

from fixed and designated facts"—namely, the existence of the mandatory twenty-minute check-in policy. *Marson*, 438 S.W.3d at 297 (quoting *Yanero*, 65 S.W.3d at 522). *Marson* makes clear that just because Thomas had "some discretion with respect to the means or method to be employed" does not mean that training and supervising jail employees to follow the mandatory twenty-minute check-in policy was "outside the ministerial realm." *Marson*, 438 S.W.3d at 297 (quoting *Yanero*, 65 S.W.3d at 522). Because he "ha[d] no choice but to do the act" of training jail employees to follow the twenty-minute check-in policy, the act "is ministerial." *Id.*

Therefore, training jail employees to follow the jail's mandatory twenty-minute check-in policy is a ministerial function, not a discretionary function. Thomas is not entitled to qualified official immunity because he failed to perform a ministerial function.

Qualified official immunity also does not apply to acts performed in bad faith, which "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness" or "willfully or maliciously intend[ing] to harm the plaintiff or act[ing] with a corrupt motive." *Yanero*, 65 S.W.3d at 523 (citation omitted). Nor does qualified official immunity apply to acts performed outside "the scope of the employee's authority." *Id.* at 522. All three criteria (a discretionary act, performed in good faith, that is within the scope of the employee's authority) must be satisfied for qualified official immunity to apply. *Id.* Because the first criterion is not met, we do not address the latter two criteria.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.