**Rodney M. BUTLER**

v.

**MADISON COUNTY JAIL, et al.**

Court of Appeals of Tennessee,
at Jackson.

On Briefs July 23, 2002.

Oct. 17, 2002.

Permission to Appeal Denied by Supreme Court March 17, 2003.

---

Rodney M. Butler, pro se.

James I. Pentecost, Andrew V. Sellers, Jackson, For Appellees, Madison county Jail and Sheriff David Woolfork.

Timothy G. Wehner, L. Michelle Greenway, Jackson, For Appellee, Kelly Ballard, M.D.

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

## OPINION

Inmate sued sheriff, county, and physician, claiming deprivation of constitutional rights under 42 U.S.C. § 1983 in connection with allegedly delayed and substandard medical treatment. The Circuit Court of Madison County granted summary judgment for sheriff, county, and physician, and denied inmate's request to amend complaint and for extension of time to conduct discovery. Inmate appeals. We affirm.

Plaintiff, Rodney Butler ("Butler," "Plaintiff," or "Appellant"), acting *pro se,* filed suit against defendants, Sheriff David Woolfork ("Woolfork"), in his official capacity as Sheriff of Madison County, Madison County Jail ("Jail"), and Dr. Kelly Ballard, M.D. ("Ballard" and, together with Woolfork and Jail, "Defendants" or "Appellees"),[1] claiming deprivation of his constitutional rights under 42 U.S.C. § 1983. Butler alleges that Defendants violated his civil rights by delaying medical care and/or providing substandard care while he was an inmate in the Madison County Jail. Butler appeals the Trial Court's grant of summary judgment in favor of Woolfork, Jail, and Ballard, and the denial of Butler's request to amend his complaint and for extension.

On January 2, 2001, Butler was received as an inmate at the Madison County Jail. Upon his admission to the Jail, Butler received a physical examination that included a test for tuberculosis. Butler tested positive for tuberculosis and elected a course of medication as his treatment.

---

1. The case was transferred to the Madison County Circuit Court by order of April 11, 2001.

The treatment was to continue for two months and Butler began taking the medication on January 18, 2001. Before beginning the medicine, Butler was informed of possible side effects and he, in turn, informed the medical staff that he had a mental health history and had recently been prescribed medication for anxiety. Butler also confided that he was a heavy drinker before his incarceration. On or about February 9, 2001, Butler began to complain to the guard of dizziness, anxiety, inability to sleep, and pressure in his head. On February 13, 2001, Butler saw the nurse who informed him that the tuberculosis medication could not cause the side effects he was experiencing. Nonetheless, Butler refused to take the medication. On February 14, 2001, Butler saw Dr. Ballard. Butler informed Ballard that the medication was causing psychiatric problems similar to those Butler had previously experienced. At this point, Dr. Ballard concluded that Butler was experiencing alcohol withdrawal and he told Butler to continue with the tuberculosis medication. On February 15, 2001, Butler took his tuberculosis medication but wrote a letter to Dr. Ballard further explaining his symptoms and feelings of claustrophobia and anxiety. That afternoon, Butler was seen by the nurse to have blood drawn for monitoring. Butler informed the nurse that he would not take his medication and no blood test was done. From February 14, 2001 until February 20, 2001, Butler was monitored and his sleep habits were recorded.

Butler's complaint alleges that on or about February 9, 2001, he suffered an "event related to the brain or of a psychiatric nature." Symptoms allegedly included dizziness, pressure, fever, headache, irritability, paranoia, memory loss, and claustrophobia. Mr. Butler notified the staff of his condition and requested immediate medical attention. Mr. Butler complains that he was not allowed to see Dr. Ballard until February 14, 2001 and, even then, did not receive the treatment he requested.[2] On March 21, 2001 Butler filed an Inmate Request, wherein he again complained of having a "psychiatric episode" and requested to see a physician and to be sent for evaluation and treatment at a mental health institute. Dr. Ballard saw Butler again on March 26, 2001 and prescribed medication for his anxiety. Mr. Butler's blood was collected and tested on March 28, 2001. The tests were normal except for elevated cholesterol. When Dr. Ballard again saw Mr. Butler on April 2, 2001, Butler informed Ballard that he [Butler] was having a "good day" and that the medication was working.

On August 8, 2001, a motion for summary judgment was filed on behalf of Defendants Sheriff David Woolfork and Madison County Jail. On August 20, 2001, a motion for summary judgment was filed on behalf of Defendant Dr. Kelly Ballard. The hearing on the summary judgment motions was set for October 5, 2001 and Appellant was duly notified. On August 22, 2001, Appellant filed a motion for extension of time in which to conduct discovery to oppose the summary judgment motions and, on August 28, 2001, Appellant filed a request to amend his complaint. Appellant did not file a response to Defendants' Motions for Summary Judgment, nor did he file an affidavit in opposition to the motion. On October 5, 2001, a hearing was held on all pending motions and by order filed October 26, 2001, the court granted Defendants' motions for summary

2. Mr. Butler's complaint states that he informed Dr. Ballard that he [Butler] had experienced similar symptoms during his military service in 1971–72. Furthermore, Butler requested to be moved to a hospital or mental health facility.

judgment and denied Appellant's motions to amend the complaint and for additional time to conduct discovery.

Appellant appeals and we find the following issues for review: (1) Whether the Trial Court erred in granting Appellees' motions for summary judgment; (2) Whether the Trial Court erred in not granting the Appellant's motion to amend the complain; and (3) Whether the Trial Court erred in not appointing a guardian ad litem for the Appellant.

### 1. Whether the Trial Court erred in granting Appellees' motion for summary judgment

■ A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 210–11 (citations omitted) (emphasis in original).

■ Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding the trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

Turning to Butler's 42 U.S.C. § 1983 claim against Ballard, we first determine the correct standard for determining a violation of a prisoner's right to medical care. The United States Supreme Court articulated the standard for determining whether a prisoner's constitutional right to medical care under the Eighth Amendment of the U.S. Constitution has been violated in *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court stated in pertinent part:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 104–05, 97 S.Ct. 285 (1976) (citation omitted).

As noted by the Sixth Circuit, the *Estelle* standard consists of two components, one objective and one subjective: "(1) a sufficiently grave deprivation, such as medical needs; and (2) a sufficiently culpable state of mind." *Berryman v. Rieger, et al,* 150 F.3d 561, 566 (6th Cir. 1998). When a prisoner suffers pain needlessly and relief is readily available, they have a cause of action against those whose deliberate indifference is the cause of suffering. *Boretti v. Wiscomb,* 930 F.2d 1150, 1154–55 (6th Cir.1991).

As the Supreme Court noted in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), a plaintiff must prove that his medical needs are serious in order to show deliberate indifference. A "serious medical need" has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H. 1977). In considering the seriousness of a medical need, courts must determine whether the defendant's act or omission resulted in a denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Neither negligence nor gross negligence will support a § 1983 claim. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285.

The record indicates that Plaintiff Butler filed no affidavits or other response to Defendants' motions for summary judgment. Tenn. R. Civ. P. 56.06 clearly states that:

> When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Consequently, we must rely solely upon the facts averred in Dr. Ballard's affidavit in deciding this issue. Dr. Ballard's affidavit states in pertinent part as follows:

> 6. Pursuant to the Policies and Procedures of Sheriff Woolfork, upon his admission to the Madison County Jail, on or about January 2, 2001, Mr. Butler underwent a physical examination that included a test for tuberculosis.
>
> 7. Mr. Butler tested positive for tuberculosis infection and he opted to be treated by taking medication.
>
> 8. Mr. Butler received his medication on a daily basis until he began refusing the medication on February 13, 2001.
>
> 9. On February 14, 2001, I personally examined Rodney M. Butler. Mr. Butler complained of being nervous, walking and pacing, unable to sleep or think about things. Mr. Butler's vital signs were stable. His mucus membranes were moist. His eyes and pupils were equal and reacted to light. His mouth and nose were clear. His neck was supple and ears were externally normal. His chest and lungs were clear to auscultation. His heart rate and rhythm was [sic] regular without a murmur. His abdomen was soft and non-distended. His extremities had no edema and his back was normal. Mr. Butler had

previously been prescribed Rifadin and Pyrazinamide for his tuberculosis. I continued these prescriptions and requested an observation of his sleep patterns.

10. Mr. Butler was by his own admission an abuser of alcohol before entering the jail, and it is my opinion that Mr. Butler may have been experiencing alcohol withdrawal.

11. On March 14, 2001, I examined Mr. Butler for a second time. Mr. Butler complained of headaches and hot feelings in the top of his head which were helped by aspirin. Mr. Butler had no complaints of hallucinations and no complaints of paranoia. Mr. Butler said that he was much better. My examination revealed that Mr. Butler's vital signs were stable and mucus membranes moist. His pupils were equal and reacted to light, extra ocular movements were intact, and fundi without papilla edema. His ears were externally normal. His nasal turbinates were slightly swollen and had some clear discharge. His mouth revealed a clear pharynx and his neck was supple without mass or bruit. His chest and lungs were clear to auscultation and percussion. His heart was beating at a regular rate and rhythm without murmur, rub or gallop. His abdomen was soft and bowel sounds positive. His extremities had no edema and his back had a slight kyphotic posture. He was fully alert and oriented to person, place, time and situation and did not appear particularly anxious. I prescribed Buspar for Mr. Butler for anxiety. Mr. Butler had previously discontinued the Rifadin and Pyrazinamide medications.

12. On March 26, 2001, I examined Mr. Butler for a third time. My examination revealed that Mr. Butler was feeling nervous and anxious. He stated that the Buspar had helped him some but not enough. He stated that he was having trouble sleeping, had "funny" thoughts at times and headaches which were relieved by aspirin. There were no thyroid masses on his neck. His chest and lungs were clear to auscultation and percussion. His heart was beating at a regular rate and rhythm without murmur, rub or gallop. His extremities had no edema. There were no focal deficits in his neurological examination. His cranial nerves and motor were intact. I tested his periphery. Mr. Butler had well organized thoughts and above average intellectual function. He was fully alert and oriented to person, place, time, and situation. I diagnosed him with tuberculosis exposure, continued the prescription for Buspar, prescribed Atarax for his anxiety, ordered laboratory tests, and ordered him to return to the Clinic in one week.

13. On March 30, 2001, I reviewed the results of Mr. Butler's laboratory tests. The panel revealed that Mr. Butler's blood pressure, kidney function, thyroid, iron level, amount of blood, and tests for inflamation and prostate cancer were all normal. The only abnormal findings were that Mr. Butler's cholesterol was slightly higher than average, and his alkaline phosphates and calcium were abnormal, but they were acceptable.

14. On April 2, 2001, I examined Mr. Butler for a fourth time. Mr. Butler explained that he was having a good day and believed the medicine was helping. Mr. Butler stated that other than a few little aches and pains he felt pretty good. He did not complain of any hallucinations, trouble sleeping, or headaches. His chest and lungs were clear to auscultation and percussion. His heart was beating at a regular rate and rhythm. His extremities had no edema. I continued Mr. Butler on his medication.

\* \* \*

18. At no time during my treatment of Mr. Butler did I observe any mental or physical condition that warranted transferring Mr. Butler from the Madison County Jail to a medical facility, such as a hospital or mental facility.

19. At no time during Mr. Butler's incarceration at the Madison County Jail, did I actively participate or encourage any action or inaction towards him.

20. I never treated Mr. Butler with deliberate indifference or gross negligence.

21. I did not disregard any medical condition of Mr. Butler.

22. I did not cause or contribute to any injury suffered by Mr. Butler. No act or omission of my own was the proximate cause of any injury alleged by Mr. Butler.

With these facts before us, summary judgment is still only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). As above noted, deliberate indifference to a prisoner's medical needs is determined through a two-part test. First, the prisoner must show "a sufficiently grave deprivation, such as medical needs ..." *Berryman v. Rieger, et al,* 150 F.3d 561, 567 (6th Cir. 1998). From the facts contained in the record, Mr. Butler suffered from tuberculosis and some symptoms of anxiety. This satisfies the first element.

The second element requires that Ballard acted with "sufficiently culpable state of mind." *Berryman,* 150 F.3d at 567. However, negligence and gross negligence are not enough. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251

(1976). Butler has presented no proof of acts or omissions. On the facts in record, it is clear that a jury could only find that Ballard's actions did not rise to the level of culpability required to make out a claim for deliberate indifference to Butler's medical needs. Therefore, the trial court did not err in granting Defendant Ballard's motion for summary judgment.

■ Likewise, Butler's claim against Sheriff Woolfork cannot survive summary judgment on a § 1983 theory based upon respondeat superior. 42 U.S.C. § 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of an State or Territory or District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*

In *Monell v. Department of Soc. Serv. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court addressed 42 U.S.C. § 1983 and its applicability to claims based on the theory of respondeat superior. The Supreme Court concluded:

[T]he language of § 1983, read against the background of the ... legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held

liable under § 1983 on a respondeat superior theory.

*Monell,* 436 U.S. at 691–92, 98 S.Ct. 2018.

■■■ While the Court's decision eradicated § 1983 claims based on a respondeat superior, liability continued under § 1983 for deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature . . ." *Id.* In order to maintain an action against Woolfork, Butler must allege that his injuries were caused directly by the execution of some official policy or custom as required by *Monell.* Butler's Complaint alleges no policy or custom of Woolfork that caused his injuries. The only facts in the record concerning policy are those contained in Sheriff Woolfork's affidavit in support of his motion for summary judgment. Woolfork's affidavit reads in pertinent part:

> 10. It is the policy of the Madison County Sheriff that all requests made by inmates for medical treatment be given the appropriate attention and that the requesting inmate be provided access to a treating medical professional if said medical treatment is necessary.
>
> 11. It is not the policy, nor has it ever been the policy, since I have been the Sheriff of Madison County, to deliberately deny an inmate medical attention for a serious medical need.
>
> 12. At no time have I implemented a policy denying medical treatment to inmates of the Madison County Jail.
>
> 13. Pursuant to my policy, jailers, employees, or other agents of the Madison County Jail were never instructed or trained to deny any inmate adequate medical attention for a serious medical need.

Based upon these facts in the record, the policies and procedures were adequate to protect the rights of Mr. Butler and these policies were followed. Consequently, Mr. Butler has failed to meet the *Monell* pleading requirements and his cause of action against Woolfork cannot stand.

■■■ Mr. Butler also appeals the Trial Court's grant of summary judgment in favor of the Defendant Madison County Jail. We affirm on the basis that The Madison County jail is not a legal entity subject to suit. *See Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994). Because the Madison County Jail is a department of the county, Madison County would have been the proper Defendant in this case. *Id.* Therefore, summary judgment was proper.

2. Whether the Trial Court erred in not granting the Appellant's motion to amend the complaint.

■■■ Leave to amend "shall be freely given when justice so requires." Tenn. R. Civ. P. 15.01. The grant or denial of a motion to amend is within the sound discretion of the trial court, and the court's action will be reversed only for an abuse of discretion. *Merriman v. Smith,* 599 S.W.2d 548 (Tenn.Ct.App.1980). Here, the Trial Court denied Butler's motion to amend his complaint because such an amendment would have been futile given the fact that, under Tenn. R. Civ. P. 56.06, Butler could not have relied upon his complaint to oppose the Defendants' motions for summary judgment. The Trial Court's holding was not unjust nor was it an abuse of discretion. Therefore, we affirm.

3. Whether the Trial Court erred in not appointing a guardian ad litem for Appellant.

■■■ Mr. Butler asserts that the trial court should have appointed a guardian ad litem to protect his rights and interests in this matter. Tenn. R. Civ. P. 17.03 provides in pertinent part:

> The court shall at any time after the filing of the complaint appoint a guardian ad litem to defend an action for an

infant or incompetent person who does not have a duly appointed representative, or whenever justice requires .

*Id.*

There is nothing in the record that definitively indicates that Mr. Butler was incompetent or of unsound mind. In fact, his ability to write his own Complaint and to correspond verbally and in writing with both the trial court and his treating physician is counter indicative. The record in this case indicates that the plaintiff, while acting pro se from the very beginning, was able to clearly represent his claims to the trial court and to this Court. Moreover, the record reflects that Mr. Butler did not seek the appointment of a guardian ad litem in the trial court and raises such an issue for the first time on appeal. Issues not raised or complained of in the trial court will not be considered on appeal. *Tamco Supply v. Pollard*, 37 S.W.3d 905, 908 (Tenn.Ct.App.2000).

The order of the trial court is affirmed. Costs of the appeal are assessed to the appellant, Rodney M. Butler, and his surety, for which execution may issue, if necessary.