MERRITT, Circuit Judge.
Cleveland police officer Daniel Zola, in the execution of an arrest warrant, shot and killed Daniel Withers, an unarmed twenty-one-year-old man, in a basement closet at the home Withers shared with his grandmother. Withers’s parents sued the city and Zola under 42 U.S.C. § 1983, asserting a constitutional violation of Withers’s Fourth Amendment right to be free from unreasonable seizure. After limited discovery, the District Court entered summary judgment in favor of Zola and granted the City of Cleveland’s motion to dismiss Withers’s municipal liability claim. It found that Zola acted reasonably as a matter of law when he shot and killed Withers. As in our recent Cleveland police shooting case, Lopez v. City of Cleveland, 625 Fed. Appx. 742 (6th Cir.2015), we conclude that there is a material dispute of fact that requires a jury trial under the Seventh Amendment (“the right to a trial by jury shall be preserved ... according to the rules of the common law”). U.S. Const. amend. VII. We follow the same standards announced in the Lopez v. City of Cleveland case:
“In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry.” Tolan [v. Cotton, —U.S.-,] 134 S.Ct. [1861,] 1865 [188 L.Ed.2d 895 (2014)]. Under the first prong, a court must determine whether “the facts, ‘[t]aken in the light most favorable to the party asserting the injury, ... show the officer’s conduct violated a [federal] right [.]’ ” Id. (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Under the second prong, a court must determine whether the right was “clearly established” at the time of the alleged violation. Id. at 1866. “[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.” Id. This is “an. application of the more general rule that a ‘judge’s function’ at summary judgment is not ‘to weigh the evidence and determine the-truth of the matter but to determine whether there is a genuine issue for trial.’ ” Id. (quoting Anderson [v. Liberty Lobby ], 477 U.S. [242], 249 [106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ]).
Lopez, 625 Fed.Appx. at 745.
Because the District Court improperly disregarded the factual disputes underly- *418 mg Withers’s claim against Zola, we REVERSE the court’s grant of summary-judgment in Zola’s favor and REMAND for further proceedings consistent with this opinion.
I. Facts
On the night of September 30, 2010, Cleveland police officers Thomas Shoulders, David Shapiro, and Daniel Zola executed an arrest warrant for Daniel Withers, an armed bank robbery suspect who had allegedly threatened to “blow [the teller’s] head off.” The officers arrived at the home Withers shared with his grandmother and saw a man that they presumed to be Withers in the upstairs window. After the man disappeared from the window, the officers obtained Withers’s grandmother’s consent to search the house. The three officers cleared the upper floors of the house, leaving only the basement to be searched. Once backup arrived to secure the perimeter, Shoulders, Shapiro, and Zola conducted a search of the basement.
Shoulders entered the basement first, followed by Shapiro and Zola, respectively. Because only a single light illuminated the basement, the officers used their flashlights to provide additional lighting during the search. After entering the basement, the officers repeatedly ordered Withers to come out and “show us your hands.” Having cleared the rest of the house, the officers zeroed in on the last place they had yet to search, the built-out closet in the far left corner of the basement. Shoulders positioned himself by the closed closet door while Zola moved into a tactical position at a twenty to thirty degree angle from the door. [R. 38, Page ID #: 737, 739-40; R. 38-1, Page ID #: 783]. Shapiro stood in the area behind Zola.
From this point on, the facts are in dispute. Zola testified that when Shoulders opened the door, Zola saw a body and “an arm [that] flew up real fast” on the right side of the body. According to Zola’s testimony, he fired a single deadly shot into the person’s chest “[l]ess than a split second” later. At the time Zola fired at the figure in the closet, he saw no weapon, and because of the angle of Zola’s position in relation to the closet, Zola was unable to see the left side of the person’s body. [R. 38, Page ID #: 739-40; R. 38-1, Page ID #: 849].
A neighbor named Dennis Daniels contradicted Zola’s testimony by offering a different account of the shooting. After Withers had been removed from the house, Daniels overheard a conversation in the front yard of Withers’s home between two Cleveland police officers, a superior officer and another male officer who had been inside the basement when Withers was shot. Daniels observed and heard the superior officer, who was not present at the shooting, ask the junior officer, who was present at the shooting, what happened inside the basement. Apparently the junior officer was Zola. He stated that he saw Withers, “we [the officers] said ‘get down fucker, get down fucker,”’ and then he shot Withers.
In the moments after the shooting, Zola and his colleagues searched the person for a firearm; the person was unarmed. The person was identified as Daniel Withers. Withers later died from his gunshot wound.
Withers’s parents sued Zola and the City of Cleveland under 42 U.S.C. § 1983, asserting a violation of Withers’s constitutional rights, including his right under the Fourth Amendment to be free from unreasonable seizure. After limited discovery, Zola moved for summary judgment. The District Court granted summary judgment in favor of- Zola after finding, as a matter of law, that Zola acted reasonably when he shot Withers. Withers v. City of Cleve *419 land, No. 1:11CV2004, 2014 WL 1761925, at *1 (N.D.Ohio May 1, 2014). Because the District Court found that Zola’s use of deadly force was reasonable as a matter of law, it did not specifically address the qualified immunity question of whether the constitutional right at issue was clearly established. Id. at *5. Having found no underlying constitutional violation, the court dismissed Withers’s claim against the City of Cleveland.
II. Analysis
We set out the standard for qualified immunity in the introductory paragraphs above. Qualified immunity in cases involving claims of excessive use of deadly force is difficult to determine on summary judgment because an officer’s liability turns upon the Fourth Amendment’s reasonableness test. Sova v. City of Mt. Pleasant, 142 F.3d 898, 902 (6th Cir.1998); see also Lytle v. Bexar County, Tex., 560 F.3d 404, 411 (5th Cir.2009) (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir.1999) (stating that “reasonableness under the Fourth Amendment should frequently remain a question for the jury”)). An officer’s use of deadly force is reasonable only if “the officer has probable cause to believe the suspect poses a significant threat of death or serious physical injury to the officer or others.” Tennessee v. Garner, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The proper application of the Fourth Amendment reasonableness test “requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This is an objective test, to be “judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Id. While the evaluation of reasonableness must also recognize that “police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation,” id. at 396-97, 109 S.Ct. 1865, the fact that “a situation unfolds relatively quickly ‘does not, by itself, permit officers to use deadly force,’ ” Estate of Kirby v. Duva, 530 F.3d 475, 483 (6th Cir.2008) (quoting Smith v. Cupp, 430 F.3d 766, 775 (6th Cir.2005)); see also Chappell v. City of Cleveland, 585 F.3d 901, 915 (6th Cir.2009) (“If [Cleveland] detectives had fired immediately upon finding [the suspect] hiding in the closet with a knife, their actions would certainly be held objectively unreasonable.”).
Summary judgment is inappropriate where there are factual disputes regarding the reasonableness of an officer’s use of deadly force. See, e.g., Sova, 142 F.3d at 903. When the reasonableness of an officer’s use of deadly force is “completely dependent upon which view of facts is accepted by the jury,” a court may not grant an officer immunity from a deadly force claim. Brandenburg v. Cureton, 882 F.2d 211, 215-16 (6th Cir.1989). We have repeatedly held that when the legal question of qualified immunity depends on which version of the facts one accepts, the jury, not the judge, acts as the final arbiter of immunity. Scozzari v. Miedzianowski, 454 Fed.Appx. 455, 463 (6th Cir.2012); Leonard v. Robinson, 477 F.3d 347, 355 (6th Cir.2007); Sova, 142 F.3d at 903. This is especially true where, as here, the “District Court must view the facts in the light most favorable to the plaintiff on a motion for summary judgment.” Sova, 142 F.3d at 903.
*420 The District Court erred in finding that Zola acted reasonably as a matter of law when he fatally shot Withers. The parties advance two irreconcilable versions of what occurred in the moments before the shooting, and because a genuine dispute of material fact regarding the reasonableness of Zola’s use of deadly force exists, we are compelled to reverse the District Court’s grant of summary judgment to Zola. First, the statement in Dennis Daniels’s affidavit contradicts Zola’s testimony and creates a genuine issue of material fact as to whether Zola’s decision to use deadly force was reasonable. Second, the officers’ testimony creates a genuine issue of material fact as to whether Zola’s use of deadly force was objectively reasonable. We address each of these errors in turn.
The District Court concluded that the statement in Dennis Daniels’s affidavit that officers yelled the obscenity “get down fucker, get down fucker” before Zola fatally shot Withers did not, for the purposes of summary judgment, contradict Zola’s testimony that he shot Withers “[l]ess than a split second” after Shoulders opened the closet door. The court found that this evidence did not create a genuine issue of material fact because “it neither disputes the fact that [Zola] could barely see Withers’s silhouette nor that Withers made a sudden movement with his right hand.” Withers, No. 1:11CV2004 at *9. The District Court’s conclusion is in error because it fails to consider that there was a lapse of time between Zola’s discovery of Withers and his shooting Withers. This lapse in time between the two events creates a dispute that goes to the heart of whether the shooting took place in a “split second” and whether it was reasonable for Zola to use deadly force against Withers.
Drawing all inferences in Withers’s favor, as we must, the statement in Daniels’s affidavit contradicts Zola’s testimony that he shot Withers in “[l]ess than a split second.” Zola could not have possibly identified a body, shouted the obscenity, and then shot Withers — all in “[l]ess than a split second.” This contradiction creates a genuine issue of material fact because the length of time between Zola’s discovery of Withers and his use of deadly force against Withers bears on the reasonableness of Zola’s use of deadly force. That is, if a jury credits Daniels’s testimony, it could reasonably infer that Zola’s actions were unreasonable because he would have had more time than he claimed — much more than “[l]ess than a split second” — to ascertain whether Withers was armed before he shot and killed Withers for making a hand gesture consistent with the officers’ lawful orders to “show us your hands.” We have previously held that an officer’s use of deadly force is not reasonable as a matter of law when “the circumstances [ ] present a genuine question [as to] whether the situation compel[s] a split-second decision to use lethal force.” Scozzari, 454 Fed.Appx. at 463 (affirming the District Court’s denial of summary judgment in part because a genuine issue of material fact existed as to whether officers were forced to make a split-second decision when a suspect wielding a hatchet charged them); see also Estate of Kirby, 530 F.3d at 482-83 (affirming the District Court’s denial of summary judgment in part because the officers were not forced to make a split-second decision when they “had sufficient time [a few seconds] under the plaintiffs’ account to assess the situation before firing several rounds at the suspect”); Sample v. Bailey, 409 F.3d 689, 700 (6th Cir.2005) (stating that “[o]nce a suspect has been found, however, and the police have weapons directed at him ... the inherent danger to the officers resulting from a hidden suspect in an enclosed, unfamiliar area at night is diminished”). Thus, because the statement in Daniel’s *421 affidavit creates a genuine issue of material fact as to whether Zola acted reasonably in fatally shooting Withers, the District Court’s grant of summary judgment to Zola was in error.
In addition to Daniels’s testimony, Zola’s deposition demonstrates that the officers repeatedly ordered Withers to “show us your hands” as they searched the basement in the moments before the shooting. This command casts doubt on the reasonableness of Zola’s use of deadly force because a reasonable officer could certainly expect a suspect to make gestures with his arms and hands consistent with the lawful order to “show us your hands” giyen only moments earlier. See Sample, 409 F.3d at 697 (stating that arresting officers should expect suspects to make movements consistent with lawful orders). In fact, Shapiro testified that when an officer yells “show us your hands,” the “normal reaction is [for the suspect] to show you [his] hands.” Our dissenting colleague states that there is no support in the record for the fact that the officers repeatedly ordered Withers to “show us your hands” as they searched the basement in the moments before the shooting. Post, at 422. Here is the support from Zola’s deposition that we rely on:
Q. And while you were in the basement, had you yelled out any orders to Danny Withers?
A. Yes.
Q. What had you yelled out?
A. That we were looking for him and if he was down there, please let us know you’re down here and show us your hands. And we didn’t hear anything. Q. Had you heard either Officer Shoulders or Officer Shapiro also yelling out instructions or commands?
A. Yes.
Q. What had you heard Officer Shoulders yell out?
A. The same thing. He was yelling for Danny Withers, if you’re down here, just say something. Come out.
Q. How about Officer Shapiro?
A. The same thing. Cleveland Police, if you’re down here, say something. We’ll bring you out.
[R. 38, Page ID #: 734-35] (emphasis added). Our dissenting colleague also emphasizes that neither Shoulders nor Shapiro testified that they commanded Withers to “show us your hands.” Post, at 422. As the City of Cleveland recognizes in its brief, the relevant legal question is “what Officer Zola knew at the time” of the shooting. (Appellee Br. 10). Consequently, Zola’s statement that the officers commanded Withers “to show us your hands” in the moments before the shooting is the only testimony that relates to Zola’s mental state at the time of the shooting, which is the relevant legal question.
The District Court also failed to consider a related fact: Zola could not see the left side of Withers’s body because Zola’s position in relation to the closet obstructed his view of Withers. Zola’s inability to view the entire left side of Withers’s body forecloses a finding that Withers’s movement of his right arm did not comply with the officers’ “show us your hands” command. Because Zola could only see Withers’s right arm, Withers’s movement of his arm was consistent with the officers’ lawful order for Withers to “show us your hands.”
A jury could decide that a reasonable officer would see Withers’s gesture as an act of compliance with the officers’ lawful commands. The jury could believe that Withers’s gesture was consistent with surrender because the officers had announced that they were armed while he was unarmed and shirtless. The case is similar *422 to Sample, 409 F.3d at 697, in which we affirmed the denial of an officer’s motion for summary judgment because the officer’s use of deadly force against a suspect who moved his hands to comply with the officer’s commands was unreasonable. In distinguishing Sample, the District Court necessarily implied that, unlike the suspect in Sample, Withers did not comply with Zola’s commands. Sample, 409 F.3d at 697. This is a jury question. Zola testified that the officers repeatedly commanded Withers to “show us your hands” in the moments before the shooting, and while Zola’s view of Withers’s left arm was obstructed, he did see Withers raise his right arm, an action that was consistent with the officers’ commands. [R. 38, Page ID: 735, 739-40].
Thus, because the officers’ testimony creates a. genuine issue of material fact as to whether Zola acted reasonably in fatally shooting Withers, the District Court erred in granting Zola summary judgment.
III. Clearly Established Law
In light of its holding that Zola committed no constitutional violation, the District Court did not reach the clearly established prong of the qualified immunity analysis, and the City of Cleveland made no arguments regarding this prong on appeal. Although we only decide the issue before us, we emphasize that the law was clearly established that an officer may not use deadly force against a suspect unless “the officer has probable cause to believe the suspect poses a significant threat of death or serious physical injury to the officer or others.” Garner, 471 U.S. at 3, 105 S.Ct. 1694, Because there are disputes of fact that relate directly to this issue, it appears that Zola cannot establish that he is entitled to qualified immunity based on the clearly established prong of the qualified immunity analysis. In Tolan v. Cotton, 134 S.Ct. at 1866, the Supreme Court explained that a court should not resolve disputes of fact in the qualified immunity analysis, just as our court observed in Lopez v. City of Cleveland, quoted in the introductory paragraphs of the opinion.
IV. Municipal Liability
The District Court dismissed Withers’s § 1983 claim against the City of Cleveland after finding that Zola’s use of deadly force was reasonable as a matter of law. Given our holding as to that issue, we also reverse the District Court’s dismissal of Withers’s municipal liability claim and remand for further consideration in light of these proceedings.
Accordingly, we REVERSE the judgment of the District Court and REMAND for further proceedings consistent with this opinion.