NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0244n.06

**Case No. 15-3861**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**FILED**

May 06, 2016

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| RONALD HARRIS, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE NORTHERN DISTRICT OF |
| ROBERT LANGLEY; PATRICK | ) OHIO |
| PETRANEK; CLEVELAND POLICE | ) |
| DEPARTMENT; CALVIN WILLIAMS; | ) |
| CITY OF CLEVELAND, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| DOMINIK PENDLETON, Individually and as | ) |
| an Employee of the Cleveland Police | ) |
| Department, | ) |
| | ) |
| Defendant-Appellant. | ) |

**BEFORE: BATCHELDER and WHITE, Circuit Judges; LIPMAN, District Judge.**<sup>*</sup>

    **SHERYL H. LIPMAN**, District Judge. This appeal addresses whether Defendant Officer Dominik Pendleton, a Cleveland Police Officer, is entitled to immunity from federal statutory and state common law claims brought by Plaintiff Ronald Harris stemming from allegations that Officer Pendleton body-slammed and handcuffed Harris for no apparent reason.

---

<sup>*</sup> The Honorable Sheryl H. Lipman, United States District Judge for the Western District of Tennessee, sitting by designation.

Officer Pendleton moved for summary judgment, asserting the defense of qualified immunity and state-law immunity. The district court denied Officer Pendleton summary judgment on Harris' claims of excessive force and unlawful seizure under the Fourth Amendment, assault and battery, and false arrest and imprisonment. For the reasons set forth below, we **AFFIRM** the district court's decision.

I.    BACKGROUND

On July 19, 2013, Harris called 911, twice, to report that his eighty-six year old mother required evaluation by emergency medical services ("EMS") for "mental status changes." R. 26, Harris Depo., PID 153. Harris, a retired nurse in his sixties, was concerned that his mother's unusual speech patterns, "body mechanics," and behavior were precursors to a stroke. *Id.* at PID 150, 152, 174. Officer Pendleton, a patrol officer for the City of Cleveland, Division of Police, and his partner, Officer Langley, arrived at Harris' residence after receiving a call from dispatch to conduct a welfare check on an elderly female. The parties disagree about what transpired next; however, because of the posture of this case – an appeal of a denial of summary judgment on qualified immunity grounds – we only consider, and recite, the facts in the most favorable view for Harris. *See Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) ("[T]he defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.").

According to Harris, when the officers arrived at his door, Harris informed them that he had asked for EMS, and not for police assistance. R. 26, Harris Depo., PID 153-54. Harris repeated that sentiment at least once, but the police officers did not acknowledge Harris' statements. *Id.* at PID 154, 166. Believing there had been "a problem of communication with us," Harris invited each officer to come inside. *Id.* at PID 155. Both officers declined the

invitation, stating that it was too hot. *Id.* at PID 155-56. Harris then began to pull his door closed and reach for the keys to lock it. *Id.* at PID 156, 164-65.

At that moment, according to Harris, Officer Pendleton opened the door and was "all in [Harris'] face." *Id.* at PID 156. Officer Pendleton body-slammed Harris and knocked him to the floor on his back. *Id.* As a result, Harris hit his head on the back of the wall, stunning him to the point that he was temporarily unsure of where he was. *Id.* Officer Pendleton placed his left knee on Harris' back, grabbed Harris' wrist, and handcuffed him. *Id.* at PID 156-57. Harris asked Officer Pendleton, multiple times, why he was being handcuffed, and Officer Pendleton replied that it was because Harris had called him a "motherfucker." *Id.* at PID 156, 166. Harris, however, claims that he did not use that word or any other vulgar or aggressive language with the officers. *Id.* at PID 166. Harris was handcuffed for approximately two minutes. R. 27, Pendleton Depo., PID 217. Shortly after this incident, Officer Langley entered Harris' home and said that he would call a supervisor. R. 26, Harris Depo., PID 158. A supervisor arrived at the scene, and Harris filled out a complaint against Officer Pendleton. *Id.* at PID 159. Harris "wasn't in any shape to seek medical treatment that day," but at some point he was examined at the VA hospital for injuries to his back and right wrist, and for general soreness. *Id.* at PID 188. At no point did Officers Pendleton or Langley speak to Harris' mother or attempt to ascertain her health status. *Id.* at PID 158.

II.   ANALYSIS

A. Jurisdiction

Pursuant to 28 U.S.C. § 1291, this court has "jurisdiction of appeals from all final decisions of the district courts." "Denial of summary judgment is usually considered an interlocutory order, not a final judgment, and thus not appealable to this court. However, denial

of a motion for summary judgment on the ground of qualified immunity may be deemed a final, appealable order because the qualified immunity doctrine exists partly to protect officials from having to stand trial, and a defendant wrongly forced to go to trial loses the benefit of the immunity even if exonerated after trial." *Bishop v. Hackel*, 636 F.3d 757, 764 (6th Cir. 2011). Accordingly, this court has jurisdiction to review a district court's denial of a claim of qualified immunity to the extent that the appeal raises questions of law, "notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Johnson v. Jones*, 515 U.S. 304, 317 (1995) ("[C]onsiderations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law.").

"[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). "Instead, a defendant denied qualified immunity may appeal only if the issue on appeal is whether the plaintiff's facts, taken at their best, show that the defendant violated clearly established law." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013).

Here, Officer Pendleton presents three issues for review:

(1) Whether the District Court erred by denying summary judgment as to the excessive force claim when Officer Pendleton's alleged conduct would have been objectively reasonable?

(2) Whether the District Court erred by denying summary judgment as to the unlawful seizure claim when the alleged detention of suspect was based upon probable cause?

(3) Whether the District Court erred by denying summary judgment as to the state-law claims when Officer Pendleton's alleged conduct was not malicious, in bad faith, or wanton or reckless?

Pendleton Br. 7. Harris opposes appellate jurisdiction, asserting that Officer Pendleton's "statement in support of jurisdiction, as well as the arguments themselves, do not identify the specific legal issue but only complain of the district court's weighing of factors . . . ." Harris Br. 5. The court agrees that Officer Pendleton wastes much of his brief arguing that the district court did not weigh certain disputed facts properly. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 309-10 (6th Cir. 2005) ("Because this court does not have appellate jurisdiction over factual issues, a defendant must 'concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'") (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).[1] However, "even where, as here, the defendant makes impermissible arguments regarding disputes of fact, if the defendant also raises the purely legal issue of whether the plaintiff's facts show that the defendant violated clearly established law, then there is an issue over which this court has jurisdiction." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). Because Officer Pendleton does at times concede Harris' version of the facts and argues that, despite this concession, he did not violate any of Harris' clearly established constitutional rights, this court has jurisdiction to hear his appeal. Pendleton Br. 17, 23. Thus we proceed on Harris' version of the facts. But "in accepting the district court's factual determinations and relying on the plaintiff's record evidence for the purpose of deciding interlocutory appeal, we do

---

[1] For instance, Officer Pendleton argues that "[t]he District Court . . . incorrectly held that it must accept Plaintiff's version and may not weigh different versions. Rather the appropriate standard calls for determining whether or not an officer's actions were reasonable under 'the totality of the circumstances.'" Pendleton Br. 20 (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). This statement is wholly incorrect: Officer Pendleton conflates the burden of proof with the elements of an excessive force claim. At summary judgment, where there are disputed issues of material fact, the district court is *required* to view the facts in the light most favorable to the non-moving party, and *then* determine whether the totality of the circumstances demonstrates that a use of force was objectively reasonable.

not ourselves make any findings of fact or inference for purposes of any subsequent proceedings." *DiLuzio v. Vill. Of Yorkville*, 796 F.3d 604, 611 (6th Cir. 2015) (citations omitted).

B. Qualified Immunity

"Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop*, 636 F.3d at 765 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "Either step can precede the other as desired." *Gordon v. Louisville/Jefferson Cty. Metro Gov't*, 486 F. App'x 534, 541 (6th Cir. 2012). We review the district court's denial of summary judgment on the grounds of qualified immunity, as limited to questions of law, de novo. *Bishop*, 636 F.3d at 765.

1. Excessive Force

We first review whether Officer Pendleton violated Harris' Fourth Amendment right to be free from excessive force when he allegedly grabbed Harris by the wrist, body-slammed him, and placed his knee into Harris' back. We then determine whether that right, if violated, was clearly established.

The Fourth Amendment prohibits police officers from using excessive force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). When a citizen claims "that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . such claims are properly analyzed under the Fourth Amendment's 'objective

reasonableness' standard." *Id.* at 388. "[O]bjective reasonableness turns on the facts and circumstances of each particular case. A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (internal quotation and citation omitted). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations and citations omitted).

The court must also examine the following factors in this balancing test: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (internal quotations and citation omitted); *see also Lopez v. City of Cleveland*, 625 F. App'x 742, 746 (6th Cir. 2015) ("The Court has identified three non-exhaustive factors for lower courts to consider in determining the reasonableness of a police officer's use of force: (1) the severity of the crime at issue; (2) whether the suspect posed

an immediate threat to the safety of the officer or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.").

Here, conceding the facts in favor of Harris, Officer Pendleton's actions are sufficiently excessive to be in violation of the Fourth Amendment. Harris requested EMS to come to his home to evaluate his elderly mother's health. When two police officers arrived on the scene, Harris explained to them that he had requested EMS and not the police. Both police officers ignored Harris, at which point Harris invited them to come inside. Both police officers denied Harris' invitation. At no point did the police officers inquire into Harris' mother's health, vitiating any argument that the police officers felt compelled to use force for Harris' mother's sake. Moreover, Harris did not exhibit any signs of threatening or at-risk behavior to the police officers. There was no need for *any* force in this situation because no crime was being committed and there was no immediate threat to the safety of anyone; yet, when Harris decided to close the door to his own home, Officer Pendleton suddenly attacked him without warning. This unprovoked violence cannot be excused as the consequence of a "split-second judgment." The facts, as alleged, portray a patently unreasonable use of force.

The court must next determine whether Harris' violated rights were clearly established. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In deciding whether the right was clearly established, the Supreme Court has cautioned lower courts 'not to define clearly established law at a high level of generality.'" *Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has

previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citation omitted). Here, there is no opacity in the Fourth Amendment's prohibition on unprovoked body slams from police officers, whether this exact scenario has been held unlawful in a previous decision or not. Because Officer Pendleton allegedly violated Harris' clearly established constitutional right to be free from excessive force, Officer Pendleton does not receive the shield of qualified immunity on this claim.

### 2. Unlawful Detention

We now determine whether Officer Pendleton's temporary handcuffing of Harris was an unlawful seizure in violation of the Fourth Amendment, and, if so, whether that right was clearly established.

There are two prongs to a Fourth Amendment unlawful seizure analysis: first, whether a "seizure" occurred, and, second, whether that seizure was unreasonable. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). As to the first inquiry, "[i]t must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16; *see also Al-Lamadani*, 624 F. App'x at 410 ("The Fourth Amendment protects against unreasonable seizures, including seizures that involve only a brief detention short of traditional arrest.") (quotation marks and citation omitted). Although Harris was not arrested, it is clear that Officer Pendleton seized Harris when he placed his knee into Harris' back and handcuffed him, restraining his liberty. We next consider the second prong of the analysis: whether that seizure was unreasonable.

Every arrest must be supported by probable cause to be considered reasonable; however, in a case such as this one, where there has been a limited intrusion on a person's liberty but no

formal arrest, that intrusion may be justified by something less than probable cause. *See Michigan v. Summers*, 452 U.S. 692, 700 (1981); *see also Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) (cataloging cases where a less severe intrusion was justified absent probable cause). "There is no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry*, 392 U.S. at 21 (internal quotation marks omitted). Here, again in the most favorable view for Harris, his detention was unreasonable because the scale tips uniformly on one side – there was no need to detain Harris, but his liberty was invaded nonetheless.

In his brief, Officer Pendleton contends that he had probable cause to detain Harris because Harris obstructed official business in violation of Ohio Revised Code § 2921.31 and Cleveland Codified Ordinance 615.06. Pendleton Br. 18-19. Ohio Revised Code § 2921.31 states that, "no person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." The Cleveland Ordinance includes a parallel provision requiring a purposeful intent to obstruct the performance of a public official's duty. Harris acknowledged that he made a call for a welfare check, and that public officials are asked to conduct welfare checks; however, relying on Harris' version of the facts, there can be no question that Harris did not *intend* to prevent, obstruct, or delay the performance of the police officers by pulling his door closed after the police officers had just declined his invitation to enter his home.

Officer Pendleton also lacked probable cause to suspect that Harris pulled the door closed to commit a crime against his elderly mother. Harris called for emergency medical services, greeted the police officers when they arrived at the scene, and invited the police into his home –

there is no reason to believe that Harris was in pursuit of harming his mother. Although there was no probable cause to believe that Harris had committed or was about to commit any crime, that does not end the analysis because, in *Summers*, 452 U.S. at 700, the Supreme Court enumerated a number of other considerations that may justify a limited intrusion absent probable cause.

In *Summers*, the Supreme Court found that a limited intrusion was reasonable when the police temporarily restrained a person, absent probable cause, while conducting a search in that person's home pursuant to a validly executed search warrant. *Id*. "The rule announced in *Summers* allows detention incident to the execution of a search warrant 'because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial.'" *Bailey v. United States*, 133 S. Ct. 1031, 1038, 185 L. Ed. 2d 19 (2013) (quoting *Muehler v. Mena*, 544 U.S. 93, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005)). The additional intrusion was considered "slight" because, according to the Supreme Court, a homeowner may *wish* to remain in her home during a search and the impaired dignity of a public detention is absent inside the privacy of one's own home. *Summers*, 452 U.S at 700. The Court also tallied the following justifications for such intrusions: preventing flight, minimizing the risk of harm to the officers, a suspicion of wrongdoing regarding the detained resident, and promoting the orderly completion of the search. Id. at 702-703. Ultimately, "[a] determination of reasonableness hinges on 'the law enforcement interest and the nature of the 'articulable facts' supporting the detention.'" *Gordon*, 486 F. App'x at 542 (quoting *Summers*, 452 U.S. at 702).

Here, there are no articulable facts or law enforcement interests supporting any detention, light or otherwise: There was no "interest in minimizing the risk of harm to the officers," *Summers*, 452 U.S. at 702, because there was no credible threat to the police officers' safety

when Harris pulled his door closed *after* the police officers declined his invitation to enter; there was no valid search warrant requiring detention for "the orderly completion of [a] search," *id.* at 703; there was no viable concern that Harris was engaged in wrongdoing, as discussed *supra*, nor was there any "legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found," *id.* at 702, because there was no search warrant and Harris was the person who called for emergency medical services and even invited the police officers into his home. Conceding Harris' version of the facts, Officer Pendleton's seizure of Harris was demonstrably unreasonable. Moreover, the Fourth Amendment clearly prohibits an absolutely unjustified seizure of an individual. As a matter of law, Officer Pendleton is not entitled to the shield of qualified immunity for this claim.

### C. State-law Immunity

The district court denied Officer Pendleton's state-law immunity defense for the claims of assault and battery and false arrest and imprisonment. Ohio Revised Code § 2744.03(A)(6) provides immunity to state employees of political subdivisions for any act in connection with a government function causing injury, unless the act was "manifestly outside the scope of the employee's employment or official responsibilities" or was done "with malicious purpose, in bad faith, or in a wanton or reckless manner." When federal qualified immunity and Ohio state-law immunity under § 2744.03(A)(6) rest on the same questions of material fact, the court may review the state-law immunity defense "through the lens of the federal qualified immunity analysis." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 n.1 (6th Cir. 2009). As discussed, conceding the facts in favor of Harris, there is no justification for either the body slam or the detention; accordingly, there is no state-law immunity from the claims arising out of those

actions because they were done in bad faith and in a wanton or reckless manner.  As a matter of

law, Officer Pendleton is not entitled to state-law immunity from Harris' state-law claims.


III.     <u>CONCLUSION</u>

For the foregoing reasons, the order of the district court is **AFFIRMED**.